## Moore et al. *v.* Thibodeaux.

The surety in a tutor's bond cannot be released, for the purpose of testifying in favor of the tutor in an action against the latter to compel him to account, though other and sufficient security be offered by the tutor.

Where a wife, after remaining in this State, where her husband was domiciled, removes to another in conformity with the decree of her husband, on account of superior advantages supposed to be afforded by the latter for rearing and educating their children, and does not return, property acquired by the husband in this State during the absence of the wife will be community property. *Per Curiam:* We cannot say that, in discharging the duties of a mother at the place selected by her husband, she was rendering him no assistance.

Though a party have no authority to receive the funds of a succession or to pay its debts, yet if the funds of the succession have been applied by him as the law would have applied them, the heir will be bound by such payments, and he will be entitled to credit for their amount in a settlement with the heirs.

A receipt *sous scing-privé* given to an administrator on the payment of an account, is not evidence that the account was due, if the fact of its being due be disputed.

APPEAL from the District Court of Terrebonne, *Burk, J.  W. Hall*, for the plaintiffs. *J. C. Beatty*, for the defendant. The judgment of the court was pronounced by

ROST, J. This is a suit to compel the defendant to account, as tutor of the minor children of *Emmor Moore*, deceased. The defendant filed an account, which was opposed by the plaintiffs, and upon that opposition a judgment was rendered in their favor for the amount claimed. The plaintiffs and defendant both appealed.

It is in evidence that the succession of *Emmor Moore* was opened in 1835, and that, shortly after, the defendant was appointed tutor *ad bona* to the minor heirs, *Jeffries Moore, Emily Moore, Mary Moore* and *Emmor Moore*, who were at the time in the State of Ohio, with their mother, the surviving wife of the deceased. After the death of *Emmor Moore*, and before the appointment of the defendant as tutor, *James Moore*, another minor heir, died. *Joseph H. Moore* and *Mrs. Jeffries*, were the only heirs of age. No administrator was appointed to settle the succession; but, on the application of the defendant, acting as tutor, the property was sold for cash to pay the debts, and the proceeds paid over by him to the heir of age, *Joseph H. Moore*, who bound himself to apply them to the payment of the debts.

In 1836, *Sarah W. Baker*, the surviving widow, was appointed guardian of

three of the minors, in the State of Ohio, and gave *Joseph H. Moore* a power of attorney to manage the affairs of the minors in Louisiana. *Joseph H. Moore* was himself appointed, in the State of Mississippi, guardian of *Emily Moore* the remaining minor heir. *Jeffries Moore*, subsequently died, leaving as his heir *Ella Moore*, who is represented by *Evelina Applegate*, her mother and tutrix. *Mary* and *Emily* subsequently married, and with the tutrix of *Ella*, are the plaintiffs in this suit.

They allege that their father left, at his death, the undivided half of the plantation and slaves described in their petition as his sole property, his wife never having resided in Louisiana, and no community having existed between them: that the defendant caused said property to be sold, and received as the price of it $28,847, of which they claim their portion, as heirs of their father and of their brother *James*. They pray that the tutor be made to account and pay over to them their respective shares, with interest. The answer states that the property was in community , that the succession of *Emmor Moore* being insolvent, a syndic should have been appointed by the creditors ; but that instead of this, the defendant and *Joseph H. Moore*, constituted themselves syndics, without opposition from the creditors; that the defendant paid over the amount of the sale to *Joseph H. Moore*, who applied it faithfully to the payment of the debts of the succession, as appears by the account annexed to the answer.

The plaintiffs opposed the account filed on the following grounds; 1st. That *Moore* had no authority to receive the proceeds of the sale from the defendant. 2d. That the claims against the succession placed on the account as having been paid by *Joseph H. Moore*, were prescribed before such payment, if any there was; and, further, that they were prescribed before they were presented to the heirs. The plaintiffs also asked proof of the existence of a portion of the debts mentioned in the account as having been paid.

There were several bills of exceptions taken during the trial, one of which it is necessary to notice.

The witness *Jessie Batey* was offered to prove item no. 4 in the account, and his testimony having been objected to, on the ground that he was the surety of the tutor in his bond, the defendant applied to have the witness released from his obligations as surety, in order that he might testify in his behalf, and on condition that the said defendant should furnish new and sufficient security, in the amount required by law. The court granted the application, new security was given, and the court ordered that *Jessie Batey* be released. The counsel for the plaintiffs properly excepted to these proceedings. This is not one of the cases in which courts of justice have power to release a surety for the purpose of removing his disability to testify. The liability of the surety to the heirs for the previous maladministration of the tutor was fixed, and could be neither increased nor diminished by the act of the court.

The defendant took several bills of exception to the refusal of the judge to admit evidence offered by him. But as this evidence, if received, could not have changed the conclusions to which we have come, it is unnecessary to notice them.

On the merits, the first question presented to our consideration is, whether there was a community of acquets and gains between *Emmor Moore* and his wife. It is not denied that *Moore* resided in Louisiana ; and the evidence shows that his wife came to this State, and, after remaining here a few months,

went to the State of Ohio with her children, and did not return. It is contended by the plaintiffs' counsel that the property left in Louisiana by *Emmor Moore* was acquired by his sole exertions, unassisted by his wife, and belongs exclusively to his heirs. We are of opinion that the law, as well as the facts, of the case, are against that conclusion. As a general rule, the domicil of the wife is that of her husband, and she can have no other without a legal cause shown.

It is proved that the mother of the plaintiffs removed to Ohio, in conformity with the desire of her husband, on account of the superior advantages which he supposed that location to possess, for rearing and educating his children. We could not say that, in discharging the duties of a mother at the place selected by her husband, she was rendering him no assistance. The performance of those duties out of the State, cannot be made a pretext for cutting her off from her share in the community.

The claims against the succession were not prescribed, at the time they purport to have been paid by *Joseph H. Moore;* and, if the payments made by him on account of the succession were valid, the plaintiffs are bound by them. It is urged that those payments are not valid, because *Joseph H. Moore* had no warrant of law to receive the funds of the succession, or to pay its debts. It is true, he acted without authority; but, having acted, the first question to be determined now is, whether the funds were applied by him as the law would have applied them. Many things are forbidden by law to be done, which, when done, become valid and binding. Where courts of justice have any discretion, they will not disregard an illegal act, if they cannot do so without enabling parties to commit a fraud. On that ground married women and minors claiming the benefit of restitution for the illegal alienation of their property, must reimburse the sums received for it, when it is proved that those sums have accrued to their benefit. C. C. 2226. Without going into any inquiry as to the manner in which the payments were made, if the debts paid were due by the succession, the defendant must be credited with those payments in his settlement with the heirs.

We feel bound to state, however, that the proceedings of the defendant in this succession, have been extremely irregular, and that no credits can be allowed her for payments made, unless the existence and reality of the debts paid are placed beyond all reasonable doubt.

Items 5, 6, 7, 8, 9, 10, 11 and 12 of the account amount together to the sum of $1,788 42½. These debts are not denied, and prescription is the only plea filed in relation to them. Prescription had not accrued when they were paid by *Moore*, and we have already said that this plea cannot avail the plaintiffs.

It is proved that the firm of *Hoops & Moore* was a creditor of the succession for $25,087. This debt is acknowledged to have been paid, except a small balance, for which *Moore*, one of the partners, is bound to account to the firm. Items nos. 1 and 2 of the account were paid by *Hoops & Moore*, and are no doubt included in their claim. Item no. 3 is not proved. A receipt under private signature to an administrator in payment of an account, is not evidence that the account was due. Item no. 4 is not proved, and the testimony of *Jessie Batey*, offered in support of it, is inadmissible.

The defendant has proved payments to the amount of $26,875 42. This sum deducted from the price of adjudication leaves a balance of $1951 58, one half of which belongs to the heirs of *Emmor Moore*. Out of this half,

each of the plaintiffs is entitled to the sum of $156 78, with interest from the 29th June, 1835, till paid, at the rate of five per cent per annum.

It is, therefore, ordered that the judgment in this case be reversed, and that each of the plaintiffs recover of the defendant the sum of $156 78, with interest at the rate of five per cent per annum, from the 29th June, 1835, till paid, and the costs of the District Court; those of this appeal to be paid by the plaintiffs and appellees.